O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA STEPHANIE PIZARRO,<br><br>           Plaintiff,<br><br>     vs.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security,<br><br>           Defendant. | Case No. CV 14-3118 RNB<br><br>ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

Plaintiff filed a Complaint herein on April 30, 2014, seeking review of the Commissioner's denial of her application for Supplemental Security Income benefits. In accordance with the Court's Case Management Order, the parties filed a Joint Stipulation on March 2, 2015. Thus, this matter now is ready for decision.[1]

---

[1] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. §
(continued...)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues that plaintiff is raising as the grounds for reversal and remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") made a proper step two determination.

2. Whether the ALJ properly considered the opinions of the treating and examining physicians.

3. Whether the ALJ made a proper adverse credibility determination.

4. Whether the ALJ made a proper step three determination.

5. Whether the ALJ made a proper residual functional capacity ("RFC") determination as a part of her step five determination.

## DISCUSSION

As discussed hereafter, the Court finds that the ALJ failed to provide legally sufficient reasons on which she could properly rely in order to discredit the opinion of one of the four treating and examining physicians whose opinions are at issue in Disputed Issue Two. As a result of the Court's finding with respect to that part of Disputed Issue Two, it is unnecessary for the Court to reach Disputed Issue Five, which is directed to the ALJ' RFC determination as a part of her step five determination. As to all of the other disputed issues, the Court concurs with the Commissioner that reversal is not warranted.

**A.    The ALJ's adverse credibility determination (Disputed Issue Three)**

Disputed Issue Three is directed to the ALJ's adverse credibility determination

---

[1](...continued)
405(g).

1  with respect to plaintiff's subjective symptom testimony.  (See Jt Stip at 16-26.)

2      An ALJ's assessment of pain severity and claimant credibility is entitled to
3  "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v.
4  Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  Under the "Cotton test," where the
5  claimant has produced objective medical evidence of an impairment which could
6  reasonably be expected to produce some degree of pain and/or other symptoms, and
7  the record is devoid of any affirmative evidence of malingering, the ALJ may reject
8  the claimant's testimony regarding the severity of the claimant's pain and/or other
9  symptoms only if the ALJ makes specific findings stating clear and convincing
10 reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see
11 also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12
12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991)
13 (en banc).

14     Plaintiff alleged that she could not work because of anxiety, neck pain, severe
15 muscle spasms in her neck and back, a tear in her spinal core membrane, and
16 scoliosis. (See AR 97, 127, 136.)  Plaintiff testified at the hearing that on account of
17 her conditions, she found it difficult to leave home and was limited to sitting for 10-
18 15 minutes at a time and walking for 15 minutes at a time.  (See AR 97, 99, 102.)
19 Plaintiff also testified that she had a headache lasting half a day once per week, that
20 she had tingling in her left arm and spasms in her shoulders, and that she had
21 problems turning her neck.  (See AR 108-10.)

22     The ALJ found that, although plaintiff's medically determinable impairments
23 could reasonably be expected to cause the alleged symptoms, plaintiff's statements
24 concerning the intensity, persistence, and limiting effects of these symptoms were not
25 credible to the extent they were inconsistent with the ALJ's residual functional
26 capacity assessment.  (See AR 27.)  In support of this adverse credibility
27 determination, the ALJ provided seven reasons drawn from two broad categories:
28 plaintiff's testimony was inconsistent with or unsupported by the objective medical

evidence; and there were inconsistencies within the testimony itself. (See AR 27-29.) The Court finds that, although one of the seven reasons was legally insufficient, the error was harmless because the remaining six reasons were legally sufficient.

One of the reasons proffered by the ALJ was that there was an inconsistency between the number of pills in plaintiff's prescription bottles (which she had presented at her administrative hearing) and plaintiff's allegation that she had been compliant with her medications. (See AR 28-29; see also AR 99-101.) The ALJ found that there were fewer pills than expected and that plaintiff failed to explain this discrepancy. (See AR 29.) To the contrary, the record reflects that plaintiff did explain this discrepancy by testifying that she had fewer pills than expected because her mother manages her medications and because her physician directed her to take additional pills if she had an anxiety attack. (See AR 100-01.) Since the ALJ ignored these explanations, the Court finds that this was not a legally sufficient reason on which the ALJ could properly rely in support of her adverse credibility determination.

Another similar reason proffered by the ALJ was that plaintiff's complaints were inconsistent with or unsupported by the objective medical evidence: the ALJ specifically noted that the evidence reflected only mild degeneration in the cervical spine; that there was no evidence of degeneration in her shoulder or left arm; and that laboratory testing repeatedly was negative or normal. (See AR 27; see also AR 333, 366, 401, 455, 462.) The Court finds that this was a legally sufficient reason on which the ALJ could properly rely in support of her adverse credibility determination. See Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly consider conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support for the claimant's subjective complaints); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on lack of objective evidence to support claimant's subjective

complaints); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986) (noting that "a claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings").

Another similar reason proffered by the ALJ was that there was no medical evidence supporting some of plaintiff's other physical complaints: the ALJ specifically noted that (1) there was no evidence of a severe impairment affecting plaintiff's lumbar or thoracic spine; (2) there was only normal neurological testing despite plaintiff's complaints of left-sided pain with numbness; and (3) there was no imaging evidence to confirm a medically determinable impairment affecting the upper or lower extremities. (See AR 28; see also AR 333, 461-62, 719, 738.) The Court finds that this also was a legally sufficient reason on which the ALJ could properly rely in support of her adverse credibility determination.

Another reason proffered by the ALJ was that plaintiff made inconsistent statements regarding the cause and onset date of her impairments and had made no offer of proof to clarify the inconsistencies. (See AR 27-28.) Specifically, the ALJ noted unresolved inconsistencies from plaintiff's reports that her conditions were caused by: a fall in the shower in 2008; a head injury when she tried to perform handstands at 11 years old (in 1997); a sudden onset of back pain radiating to her shoulders when she was studying in approximately July 2008; a fractured tail bone at 8 years old and a neck injury while she was standing on her head sometime in adulthood; chronic neck and back pain from a childhood car accident; and musculoskeletal abnormalities since the age of 2 months. (See id.; see also AR 215, 426, 514, 568, 623, 644.) Although plaintiff disputes these inconsistencies on the basis that her conditions allegedly accrued gradually (see Joint Stip at 18), the Court concurs with the ALJ's basic conclusion that plaintiff's statements reflected an inconsistency between plaintiff's statements to some providers that her conditions began suddenly in adulthood and her statements to other providers that her conditions arose from childhood accidents. (See AR 28; Compare AR 426, 514 with AR 623,

5

644.) Accordingly, the Court finds that this also was a legally sufficient reason on which the ALJ could properly rely in support of her adverse credibility determination. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may use "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony); Smolen, 80 F.3d at 1284 (ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid"); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on inconsistencies in the claimant's testimony); Bunnell, 947 F.2d at 346 ("[T]he adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence.").

Another similar reason proffered by the ALJ was that there was an inconsistency between plaintiff's allegations of extreme pain and her admissions that she had a good response and improved functioning due to medication and physical therapy. (See AR 28; see also AR 97, 493-94.) The Court finds that this also was a legally sufficient reason on which the ALJ could properly rely in support of her adverse credibility determination.

Another similar reason proffered by the ALJ was that there was an inconsistency between plaintiff's testimony that she had extreme panic/depressive symptoms and her statements to mental health providers that she went out more with her family, became more involved with group therapy, and essentially went outside the house more often. (See AR 28; see also AR 97, 696.) The Court finds that this also was a legally sufficient reason on which the ALJ could properly rely in support of her adverse credibility determination.

Another similar reason proffered by the ALJ was that plaintiff appeared to have misrepresented the status of her alcohol abuse. (See AR 29.) Specifically, the ALJ noted that plaintiff had told a mental health provider on August 3, 2012 that she did not abuse alcohol, but she had then testified at the administrative hearing on August

30, 2012 that she continues to abuse alcohol despite taking prescription mood stabilizing medication. (See id.; see also AR 81, 749.) The Court finds that this also was a legally sufficient reason on which the ALJ could properly rely in support of her adverse credibility determination. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (claimant's presentation of conflicting information about her drug and alcohol usage was a clear and convincing reason to discount her testimony); see also Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (relying on inconsistent statements about alcohol use to reject claimant's testimony).

In conclusion, the Court finds that even if the ALJ did err in relying on one of her seven stated reasons in support of her adverse credibility determination, the error was harmless because the ALJ's six other stated reasons and ultimate credibility determination were supported by substantial evidence. See Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that ALJ's reliance on two invalid reasons in support of adverse credibility determination was harmless where remaining reasons were adequately supported by substantial evidence).

**B.     The ALJ's step two determination (Disputed Issue One)**

Disputed Issue One is directed to the ALJ's inclusion of plaintiff's alcohol abuse in her step two determination. (See Jt Stip at 2-6.)

Step two of the Commissioner's sequential evaluation process requires the ALJ to determine whether an impairment is severe or not severe. See 20 C.F.R. §§ 404.1520(a), 416.920(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the Commissioner's regulations, an impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities." See 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most

jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." Basic work activities also include mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521(b), 416.921(b); Social Security Ruling ("SSR") 85-28.[2] The Ninth Circuit has described step two as "a de minimis screening device to dispose of groundless claims." See Smolen, 80 F.3d at 1290; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

The crux of plaintiff's contention is the ALJ should not have classified alcohol abuse as one of her severe impairments because the record contains no definitive diagnosis of alcohol abuse, but only an initial diagnosis that appeared to have been subsequently ruled out. (See Jt Stip at 2-3; see also AR 669, 681.) Although the Court concurs with plaintiff that an ALJ's step two determination must be supported by evidence of a medically determinable impairment corroborated by objective diagnostic testing, see Ukolov v. Barnhart, 420 F.3d 1002, 1005-06 (9th Cir. 2005), the Court fails to see how any error by the ALJ in this regard had any effect on the ALJ's sequential evaluation process. No limitations from alcohol abuse were incorporated in the ALJ's RFC determination, her step four determination, or her step five determination. Moreover, although plaintiff contends that the ALJ's finding of alcohol abuse tainted her adverse credibility determination (see Jt Stip at 6), the Court notes that the only reason proffered by the ALJ that was implicated by evidence of plaintiff's alcohol use was that plaintiff had made inconsistent statements about her alcohol use, a reason that the Court has found was supported by substantial evidence.

Accordingly, the Court finds that, to the extent that the ALJ erred in classifying

---

[2] Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

8

alcohol abuse as a "severe" impairment in her step two determination, any error in this regard was harmless. See Stout v. Commissioner of Social Security, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error is harmless when the error is inconsequential to the ultimate non-disability determination); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of administrative decisions regarding disability).

C.     **The ALJ's step three determination (Disputed Issue Four)**

Disputed Issue Four is directed to the ALJ's failure to consider whether plaintiff's condition met or equaled the requirements of Listing 12.07 (Somatoform Disorder). (See Jt Stip at 26-28.)

At step three of the Commissioner's sequential evaluation process, the ALJ must determine whether a claimant's impairment or combination of impairments meets or equals a listed impairment set out in 20 C.F.R. Part 404, Subpart P, Appendix 1. See Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). To "meet" a listed impairment, the claimant must establish that he satisfies each element of the listed impairment in question. See Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); Tackett, 180 F.3d at 1099. To "equal" a listed impairment, a plaintiff "must establish symptoms, signs, and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." Tackett, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526).

The Commissioner's listings define a somatoform disorder as "physical symptoms for which there are no demonstrable organic findings or known psychological mechanisms." See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07. In pertinent part, a claimant must show under Listing 12.07 that her somatoform disorder manifests at least two of the following four requirements: (1) marked

9

restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. See id.

As a threshold matter, plaintiff has proffered no evidence that any physician diagnosed her with a somatoform disorder. Although plaintiff points to medical evidence suggesting the possibility of a somatoform disorder (see AR 431, 475), the record also reflects that subsequent medical evidence ruled out a diagnosis of somatoform disorder (see AR 574). Moreover, the record reflects that plaintiff was repeatedly diagnosed with anxiety and depression, which did not fall within the definition of a somatoform disorder. (See AR 17, 601, 655, 669, 705, 710, 723.) In the absence of any convincing evidence that plaintiff had a somatoform disorder, the ALJ did not err in failing to include a discussion of a somatoform disorder as part of her step three determination. See Ellison v. Sullivan, 929 F.2d 534, 537 (10th Cir. 1990) ("Given the lack of evidence in the record, the ALJ did not err by not evaluating plaintiff's condition under section 12.07."); Burns v. Sullivan, 888 F.2d 1218, 1219 (8th Cir. 1989) (finding no error in exclusion of Listing 12.07 in ALJ's step three determination because the evidence "does not support a finding of somatoform disorder" and the "psychological evaluations diagnosed situational depression, or anxiety, but these diagnoses do not fall within the definition of somatoform disorder"); see also Brown v. Bowen, 864 F.2d 336, 339 (5th Cir. 1988) (where psychologist did not diagnose somatoform disorder, but diagnosed other psychological problems, ALJ finding of not disabled was supported by record).

Moreover, even assuming arguendo that the record did contain evidence that made it incumbent upon the ALJ to discuss whether plaintiff had an impairment or combination of impairments that met or equaled the requirements of Listing 12.07, the Court finds that the ALJ's failure to do so was harmless error. As noted above, in order to satisfy the requirements of Listing 12.07, plaintiff was required to show that her somatoform disorder manifested limitations in at least two of the four areas

of mental functioning delineated in the listing. The ALJ considered these same four areas with respect to a different listing (i.e., Listing 12.04 [Affective Disorder]) and concluded that plaintiff had not made the requisite showing. (See AR 23-24.) In light of the ALJ's findings under Listing 12.04, it follows that the ALJ would have also found that plaintiff had not made the requisite showing that she met or equaled the requirements of Listing 12.07. See Hall v. Bowen, 857 F.2d 1210, 1212 (8th Cir. 1988) (by virtue of ALJ's findings that plaintiff had not shown that she had requisite limitations among the four areas of mental functioning under 12.04, the ALJ could not have found Hall disabled by a somatoform disorder even if he had properly interpreted Listing 12.07); see also Burns, 888 F.2d at 1219 (upholding step three determination as to Listing 12.07 where evidence failed to show requisite limitations in delineated areas of mental functioning).

**D.     The ALJ's consideration of the medical opinion evidence (Disputed Issue Two)**

Disputed Issue Two is directed to the ALJ's consideration of the opinions of four of plaintiff's treating and examining physicians: Dr. Lee, Dr. Stoltzfus, Dr. Galdjie, and Dr. Riahinejad. (See Jt Stip at 6-16.) As discussed below, the Court finds that the ALJ provided legally sufficient reasons to discredit all of these opinions except for that of Dr. Riahinejad.

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the

11

record.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991).  Where, as here, the treating physicians' opinions are controverted, they may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record.  See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

Likewise, to reject the uncontradicted opinion of an examining physician, an ALJ must provide "clear and convincing" reasons.  Where, as here, the examining physicians' opinions are contradicted by those of other doctors, the ALJ must provide "specific and legitimate" reasons that are supported by substantial evidence in the record.  See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999); Lester, 81 F.3d at 830-31; Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); see also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Lee

Dr. Lee, a treating physician, issued an opinion in November 2009 stating that plaintiff had a trapezius muscle spasm, that she had a "very good" response to physical therapy, and that her prognosis was "very good."  (See AR 492-94.) Approximately seven months later, in June 2010, Dr. Lee issued another opinion with a different conclusion: as support for plaintiff's request for an accommodation at college, Dr. Lee stated that plaintiff had a "permanent/chronic" disability, needed to sit in an ergonomic chair, was unable to read or write notes because she was unable

12

to sit for prolonged periods or bend her neck forward, and needed to be able to listen to audiotapes of lectures. (See AR 576.)

At issue here is Dr. Lee's June 2010 opinion, to which the ALJ declined to give great weight for two stated reasons. (See AR 31.) First, the ALJ found that the opinion was issued so that plaintiff could obtain an accommodation for her classes but contained no functional capacity assessment with regard to her ability to sustain activity for 8 hours in a standard workday or for 40 hours in a standard workweek. (See id.) The Court finds that this was a legally sufficient reason on which the ALJ could properly rely to decline to give great weight to Dr. Lee's June 2010 opinion. See Morgan, 169 F.3d at 601 (ALJ properly discounted opinion of treating physician who failed to "show how Morgan's symptoms translate into specific functional deficits which preclude work activity" and who "did not explain *how* these characteristics precluded work activity in Morgan's case") (emphasis in original).

Second, the ALJ found that Dr. Lee's June 2010 opinion was inconsistent with Dr. Lee's November 2009 opinion, which reflected significant improvement. (See AR 31.) The Court finds that this also was a legally sufficient reason on which the ALJ could properly rely to decline to give great weight to Dr. Lee's June 2010 opinion. See Young v. Heckler, 803 F.2d 963, 967 (9th Cir. 1986) (substantial evidence supported non-disability determination where treating physician's form indicating claimant was "totally disabled" contradicted earlier medical reports, including those of physician himself); see also Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (ALJ properly "identified a contradiction" within treating medical opinion before rejecting it); Morgan, 169 F.3d at 603 (ALJ properly rejected treating medical opinion that was inconsistent with itself and with other reports).

Dr. Stoltzfus

Dr. Stoltzfus, a treating psychologist, issued a Mental Residual Functional

13

Capacity Questionnaire in March 2011. (See AR 599-603.) In the questionnaire, Dr. Stoltzfus stated that he was basing his opinions on two visits with plaintiff (in September 2009 and November 2009), that plaintiff exhibited several mental symptoms, that she was "unable to meet competitive standards" in several areas of mental functioning, and that she would be absent from work more than 4 days per month. (See id.)

The ALJ provided three reasons for declining to give Dr. Stoltzfus's opinion great weight. (See AR 31.) The Court finds that, although the first reason was legally insufficient, the error was harmless because the two remaining reasons were legally sufficient.

First, the ALJ discredited Dr. Stoltzfus's 2011 opinion because it was issued after he had only two visits with plaintiff in 2009. (See id.; see also AR 599.) To the extent that the ALJ rejected Dr. Stoltzfus's opinion because he only saw plaintiff twice or because the opinion was issued retroactively, the Court finds that neither ground was a legally sufficient basis on which the ALJ could properly rely to discredit the opinion. See Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994) (opinion of physician who saw claimant twice within 14-month period was entitled to consideration as treating physician's opinion); Morgan, 169 F.3d at 601 ("[T]he circumstance of a retroactive diagnosis, standing alone, may not be sufficient to discount the opinion of a treating physician.").

Second, the ALJ noted that plaintiff was taking no prescription mood stabilizing medication at the time of Dr. Stoltzfus's treatment. (See AR 31.) The Court concurs with this reason because the record reflects that Dr. Stoltzfus left blank the question about plaintiff's prescribed medications (see AR 599) and that plaintiff did not even begin to receive regular psychiatric treatment (with a different medical provider) until after her visits with Dr. Stoltzfus in 2009 (see AR 605-09). See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii) (weight accorded to medical opinion may depend on the type of treatment that the physician has provided); see generally

Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected treating medical opinion that was not supported by recommendations and treatment commensurate with disability); Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Third, the ALJ found that there was insufficient clinical medical evidence to project Dr. Stoltzfus's evaluation as valid for more than a 12 month period, or that the limitations he assessed would be valid at the time he actually completed the evaluation. (See AR 31.) The Court notes that Dr. Stoltzfus's opinion in this regard is susceptible to different interpretations because, although Dr. Stoltzfus did state that plaintiff's impairments would be expected to last for at least 12 continuous months, Dr. Stoltzfus was unable to state when plaintiff's limitations began or what treatment plaintiff was receiving. (See AR 509, 603.) The Court finds that in light of Dr. Stoltzfus's lack of knowledge about these critical facts about plaintiff's impairment, the ALJ's interpretation of this part of Dr. Stoltzfus's opinion as not supported by sufficient clinical medical evidence was rational and must be upheld. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); see also 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii) (weight accorded to medical opinion may depend on physician's depth of knowledge about the claimant's impairment).

In conclusion, as to Dr. Stoltzfus, the Court finds that, although the ALJ proffered one legally insufficient reason to accord little weight to his opinion, the error was harmless because the ALJ also proffered two independent, legally sufficient reasons supported by substantial evidence. See Howell v. Commissioner Social Sec. Admin., 349 Fed. Appx. 181, 184 (9th Cir. 2009) (now citable for its persuasive value per Ninth Circuit Rule 36-3) (ALJ's erroneous rationale for rejecting treating

1  physician's opinion was harmless because the ALJ otherwise provided legally
2  sufficient reasons to reject opinion) (citing Stout, 454 F.3d at 1054); Donathan v.
3  Astrue, 264 Fed. Appx. 556, 559 (9th Cir. 2008) (ALJ's erroneous characterization
4  of treating physicians' opinions was harmless "because the ALJ provided proper,
5  independent reasons for rejecting these opinions").

Dr. Galdjie

Dr. Galdjie, an examining orthopedic surgeon, issued an opinion based on an evaluation of plaintiff he conducted in June 2011. (See AR 623-26.) During the examination, Dr. Galdjie noted that he did not have an opportunity to review all of plaintiff's medical records and that some parts of the examination could not be completed because plaintiff complained of pain upon being touched. (See AR 623-25.) In his opinion, Dr. Galdjie (1) rendered a diagnosis of "significant subjective symptoms with minimal objective findings"; and (2) recommended a psychological examination because he believed "that psychologically she is totally disabled at this point" (with the admission that he was not a psychological expert). (See AR 626.) In an accompanying questionnaire, Dr. Galdjie opined that plaintiff could sit, stand, or walk for one hour in an eight-hour workday. (See AR 632.)

The ALJ declined to give great weight to Dr. Galdjie's opinions because Dr. Galdjie had admitted that his examination was not complete and that his assessment was based largely on plaintiff's subjective complaints, which the ALJ had found were less than entirely credible. (See AR 32; see also AR 626.) The Court concurs. Since the Court has found, as discussed above, that the ALJ proffered legally sufficient reasons for her adverse credibility determination with respect to plaintiff's subjective symptom complaints, the Court finds that the fact that Dr. Galdjie largely relied on those complaints constituted a legally sufficient reason on which the ALJ could properly rely to decline to give great weight to Dr. Galdjie's opinions. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may reject a

medical opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible).

Dr. Riahinejad

Dr. Riahinejad, an examining psychologist, issued an opinion based on a psychological evaluation conducted in January 2012. (See AR 650-56.) In his opinion, Dr. Riahinejad stated that plaintiff had a depressive disorder and anxiety disorder resulting in the following abilities and limitations: she was capable of understanding, remembering, and carrying out simple and repetitive instructions; she had significant difficulty understanding, remembering, and carrying out complex and detailed instructions; and she was very limited in persistence due to her physical conditions. (See AR 655.)

The ALJ declined to give great weight to Dr. Riahinejad's opinion as to plaintiff's inability to complete complex and detailed instructions because Dr. Riahinejad's assessment purportedly was based largely on plaintiff's subjective complaints, which the ALJ had found were less than entirely credible. (See AR 33.) Here, however, the ALJ's characterization of Dr. Riahinejad's opinion is not supported by the record, which reflects that Dr. Riahinejad's opinion was based more heavily on his own clinical observations than on plaintiff's self-reports. Specifically, the record reflects that Dr. Riahinejad conducted an extensive review of plaintiff's medical records and conducted a complete mental status examination that included a battery of objective psychological testing. (See AR 652-55.) Accordingly, the Court finds that this was not a legally sufficient reason on which the ALJ could properly rely to discredit Dr. Riahinejad's opinion. See Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.") (citing Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1199 (9th Cir. 2008)).

Although the Commissioner contends that any error by the ALJ in failing to properly consider Dr. Riahinejad's opinion was harmless error because the ALJ's eventual RFC determination incorporated all of Dr. Riahinejad's limitations (see Jt Stip at 13-14), the Court disagrees. Although both the ALJ's RFC determination and Dr. Riahinejad's opinion essentially posited a limitation to simple and routine tasks, Dr. Riahinejad made the additional finding that plaintiff was "very limited" in persistence. Since Dr. Riahinejad's opinion as to this additional limitation in persistence was not adequately captured by the ALJ's RFC determination, it was incumbent upon the ALJ to provide legally sufficient reasons for rejecting it. The ALJ did not provide any such reasons here. See Lubin v. Commissioner of Social Sec. Admin., 507 Fed. Appx. 709, 712 (9th Cir. 2013) (RFC determination and hypothetical question limiting claimant to "one to three step tasks" did not adequately capture moderate limitation in concentration, persistence, or pace); Brink v. Commissioner Social Sec. Admin., 343 Fed. Appx. 211, 212 (9th Cir. 2009) (hypothetical question limiting claimant to "simple, repetitive work" did not adequately capture moderate limitations in concentration, persistence, or pace); Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996) (hypothetical question positing an individual with a capacity for simple jobs did not adequately capture deficiencies in concentration, persistence, or pace); see also Lester, 81 F.3d at 830 (an ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" to reject the opinion of an examining physician, even if contradicted by another physician).

**CONCLUSION AND ORDER**

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at 603; Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted

where additional administrative proceedings could remedy defects in the decision. See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

Where, as here, a claimant contends that she is entitled to an award of benefits because of an ALJ's failure to properly consider the medical opinion evidence, the Court applies a three-step framework. See Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1099-1102 (9th Cir. 2014); see also Burrell v. Colvin, 775 F.3d 1133, 1141-42 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Second, the Court determines whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful. Third, if the Court concludes that no outstanding issues remain and further proceedings would not be useful, the Court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of the proceeding." Treichler, 775 F.3d at 1100-01 (citations omitted). Only when all three elements are satisfied does a case raise the "rare circumstances" that allow the Court to exercise its discretion to remand for an award of benefits. See id.

Here, the Court finds that the second element has not been satisfied because outstanding issues remain and further administrative proceedings would be useful. Specifically, the most essential factual issue – whether plaintiff is disabled – remains unresolved because the record is unclear and contains conflicting evidence on that

issue. See Treichler, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); see also Strauss v. Commissioner of the Social Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not demonstrate the claimant is disabled within the meaning of the Social Security Act). More specifically, the Court notes that the record contains no vocational expert testimony reflecting that a person could not work with the limitations described by Dr. Riahinejad. See Harman v. Apfel, 211 F.3d at 1172, 1180 (9th Cir. 2000) (remanding for further proceedings in part because there was no testimony from the vocational expert that the limitations established by the improperly discredited evidence would render claimant unable to engage in any work).

Therefore, based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.[3]

DATED: March 19, 2015

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

---

[3] It is not the Court's intent to limit the scope of the remand.